**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| NELLY ELISKA RAVELO, | ) |
| | ) |
| Plaintiff(s), | ) CIVIL ACTION NO.:   1:20-cv-22814 |
| | ) |
| v. | ) |
| | ) |
| KIMPTON HOTEL & RESTAURANT | ) |
| GROUP, LLC, D/B/A EPIC HOTEL | ) |
| | ) |
| Defendant(s). | ) |
| _____ | / |

## COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiff, Nelly Eliska Ravelo ("Ms. Ravelo" and "Plaintiff"), hereby brings this Complaint and Demand for Jury Trial against Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel ("Defendant" or "Kimpton"), and alleges as follows:

## NATURE OF THE CLAIM

1. This action seeks compensatory damages, punitive damages, declaratory relief, injunctive relief, and any other permissible legal damages for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII").

2. Plaintiff alleges that Defendant unlawfully discriminated against her on the basis of national origin, sex, and/or race, harassed her on the basis of her national origin, sex and/or race, failed to pay adequate compensation or give Plaintiff opportunities to receive promotions on the basis of national origin, sex, and/or race, and retaliated against Plaintiff after she made complaints to human resources and the Equal Employment Opportunity Commission ("EEOC").

## THE PARTIES

3. Ms. Ravelo is a Hispanic female of Cuban origin, who has been employed by Defendant since approximately April 2009.

4. Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel is a national hotel chain with its principal headquarters based in San Francisco, California. Kimpton operates 65 hotels with over 8,000 employees nationwide and revenues of over one billion dollars.

5. At all times material hereto, Kimpton had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII.

## JURISDICTION and VENUE

6. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1331, as it arises under questions involving Title VII. This Court also has diversity jurisdiction under 28 U.S.C. §1332(a) insofar as the amount in controversy exceeds $75,000, exclusive of interests and costs, and Defendant is a foreign corporation doing business in the State of Florida while Plaintiff is a Florida resident.

7. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and all of Plaintiff's claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District and the Defendant has caused harm to a Plaintiff residing in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed charges of discrimination with the EEOC alleging continuing discrimination by Defendant and was subsequently issued a Notice of Right to Sue dated January 17, 2020.

10. Plaintiff timely filed this action within the 90 day period contained in the Notice of Right to Sue and has otherwise complied with all conditions precedent to filing suit.

## FACTUAL ALLEGATIONS

11. Ms. Ravelo was originally hired by Defendant on or about April 2009, as a banquet server at the Epic Hotel.

12. Ms. Ravelo rose through the ranks in order to eventually become a banquet captain and occasionally as of a supervisor at the restaurant in the Epic Hotel.

13. One of Kimpton's employees and/or agents, Banquet Director, Michael Poehlman ("Mr. Poehlman"), has made several disgusting, racist, cultural insensitive, and wholly inappropriate comments to Plaintiff and several other Kimpton employees.

14. Ever since Mr. Poehlman was hired by Defendant on or about the end of 2017 or beginning of 2018, Plaintiff has suffered constant emotional and mental abuse by Mr. Poehlman on account of her national origin, sex, and race.

15. Early on when Mr. Poehlman's employment at the Epic Hotel first commenced, he saw Plaintiff and several other Hispanic employees eating in the kitchen after they had finished a long and arduous banquet service.

16. Defendant's employees that work in the banquet department are often forced to work long shifts, sometimes an entire eight hours, before they are given an opportunity to take a break for lunch or to use the restroom. This in turn forces many of Defendant's employees working

in banquet, like Plaintiff, to hurriedly eat whatever food is available whenever they finish the prior banquet service or immediately before the begin the next banquet service.

17. Upon seeing Plaintiff and other Hispanic employees hurriedly eating before the next service, Mr. Poehlman sarcastically exclaimed, "Oh Look God Bless America."

18. This of course made Plaintiff and the other Hispanic employees feel hurt and ashamed on account of their national origin and for taking a break to eat lunch. This behavior by Mr. Poehlman not only violates Title VII, but state and federal employment laws requiring Defendant to allow its employees to take breaks for lunch, to use the restroom, etc.

19. Defendant is liable for the acts and conduct of its employees and/or agents towards its employees, such as Plaintiff.

20. On numerous specific instances Mr. Poehlman has singled out Plaintiff or made derogatory comments/complaints about Plaintiff's race, gender, and/or national origin.

21. As a result of this, Plaintiff made numerous complaints to Defendant's human resources department regarding Mr. Poehlman's disparate treatment of Plaintiff on account of her race, gender, and/or national origin. However, no action was taken by Defendant.

22. For example, on or about the beginning of 2018 Mr. Poehlman singled out Ms. Ravelo and chastised her in front of several other employees making several remarks regarding whether Ms. Ravelo was a banquet employee or a restaurant employee.

23. Even though Ms. Ravelo was working as a restaurant supervisor on the day in question, Mr. Poehlman continued to castigate and scold Ms. Ravelo in front of several other employees about not doing her job.

24. While taking the time to specifically single out Ms. Ravelo, Mr. Poehlman did not admonish any other white, United States born, Kimpton employees regarding their job performance.

25. Mr. Poehlman's derogatory comments were made toward Ms. Ravelo due to her race, national origin, and/or gender.

26. Ms. Ravelo attempted to privately speak with Mr. Poehlman regarding his derogatory and disparate treatment of Hispanic employees not from the United States. However, Ms. Ravelo's attempts were rebuffed.

27. In fact, Mr. Poehlman made further disparaging and inappropriate remarks in response to Ms. Ravelo's attempts to let him know that his comments were hurtful and unacceptable.

28. Being left with no other choice, in 2018 Ms. Ravelo submitted a written complaint to Defendant's human resources employee, Denise Chamorro ("Ms. Chamorro"), regarding Mr. Poehlman's inappropriate comments and disparate treatment.

29. Quite shockingly, Ms. Chamorro never reprimanded Mr. Poehlman, nor did she instruct that he undergo sensitivity training or some other remedial measure.

30. Plaintiff and several other Kimpton employees often heard Mr. Poehlman refer to people of Hispanic origin as "ranchitos" or "these people".

31. Since no actions were ever taken by Ms. Chamorro, Plaintiff hoped she could bring these issues regarding Mr. Poehlman before senior management.

32. This opportunity presented itself on or about July 13, 2018, when Kimpton had a Fireside Chat (the "Fireside Chat") where its employees could speak freely about management and discuss work related issues.

33. Human Resources Director, Denise Valdez ("Ms. Valdez"), Beverage Director Frank Pettito ("Mr. Pettito"), and other Kimpton senior management attended the Fireside Chat.

34. During the Fireside Chat, many Kimpton employees made specific complaints about the inappropriate, racist, and discriminatory comments being made by Mr. Poehlman

35. Some employees even stated that they felt harassed or were suffering severe anxiety due to Mr. Poehlman's comments and treatment.

36. Despite these complaints by Defendant's employees, no action was taken against Mr. Poehlman throughout 2018 or 2019.

37. Due to Defendant's failure to take any action against Mr Poehlman, he continued to make derogatory and otherwise inappropriate comments throughout Plaintiff's employment at the Epic Hotel.

38. Another example occurred in the summer of 2019 after a long shift, Ms. Ravelo had been performing some work outside when she briefly removed her jacket.

39. Upon seeing this, Mr. Poehlman made inappropriate and degrading comments to Ms. Ravelo over her appearance and her lack of proper uniform.

40. Kimpton does not provide its employees that work banquet with any uniforms.

41. Mr. Poehlman scolded Ms. Ravelo regarding her uniform solely due to her race, national origin, and/or sex.

42. Ms. Ravelo again reported this to Defendant's human resources department, but again no action was taken against Mr. Poehlman.

43. Feeling that her pleas for help to human resources were going unanswered, Ms. Ravelo decided to escalate the matter to the Epic Hotel's senior management.

44. Ms. Ravelo made further complaints regarding Mr. Poehlman to Erica Nelson, General Manager at the Epic Hotel, and Ana Hayes, Epic Hotel Manager.

45. Yet again, no action was taken against Mr. Poehlman.

46. On July 18 and July 19, 2019, Ms. Ravelo was working two separate outdoor events at the pool.

47. This despite the fact she had already informed management several months ago that her medical condition does not allow her to be in the sun for several hours.

48. Nevertheless, Ms. Ravelo was dutifully working the events at the Epic Hotel, while being short staffed.

49. Despite receiving stellar marks from all the guests at the event, Mr. Poehlman singled out Ms. Ravelo due to her race, sex, and/or national origin.

50. On July 18, 2019, in front of several of Defendant's staff and event personnel, Mr. Poehlman began calling Ms. Ravelo useless and lazy.

51. These types of rude comments and unprofessional remarks continued throughout the event on July 18, 2019, and even culminating with Mr. Poehlman saying it was Ms. Ravelo's fault the event did not go well.

52. In addition to these comments, Mr. Poehlman was constantly to referring to Ms. Ravelo and several other Hispanic employees as "wetbacks."

53. Mr. Poehlman constant abuse made it impossible for Plaintiff to perform her job.

54. This came to a head after the July 19, 2019, event ended, Defendant's staff and personnel that worked the event, including Ms. Ravelo, began to eat some of the left-over food.

55. This was customary in the banquet department as Defendant's employees never were given time to take a proper lunch, but were instead forced to eat leftover food and begin preparing for the next service.

56. Upon seeing this, Mr. Poehlman exclaimed in front of everyone, "this looks like a little Mexican ranch, and you all look like a bunch of wetbacks getting food."

57. Almost immediately after her shift ended on July 19, 2019, Ms. Ravelo met with Kimpton senior employee and general manager Ericka Nelson ("Ms. Nelson").

58. Ms. Ravelo reported the events that unfolded earlier to Ms. Nelson, but no further action was taken.

59. Kimpon did not even investigate Ms. Ravelo's claims.

60. Instead, shortly after the reporting of Mr. Poehlman's breach of proper work-place behavior, Plaintiff suffered a national-origin and race based retaliation campaign brought about by Kimpton's employees and/or agents.

61. Plaintiff was given numerous write-ups and other negative remarks to her employee files as a result of unjustified complaints and fabrications made by Kimpton's managers, employees, and/or agents.

62. These write-ups were made in retaliation for Plaintiff's complaints to human resources regarding Kimpton's discrimination against Plaintiff on account of her race, national origin and/or gender.

63. One specific example can be seen in September 2019, shortly after Ms. Ravelo had made complaints to human resources regarding Mr. Poehlman, she received an employee counseling notice regarding her "failure to perform."

64. This specific employee counseling notice, like all the other notices Plaintiff received after making complaints regarding Mr. Poehlman, is completely untrue.

65. Yet again in September 2019, as Ms. Ravelo was about to begin her second shift out of a double shift and was preparing the banquet hall with several other Kimpton employees.

66. All of sudden Mr. Poehlman began berating and yelling at Ms. Ravelo in front of the rest of the staff and even some clients of the Epic Hotel.

67. Mr. Poehlman stated that he did not need Ms. Ravelo for the day's service as she was lazy and her work was low quality.

68. This comment was made directly to Ms. Ravelo, in front of mostly male white colleagues that were laughing at Ms. Ravelo, while she was being yelled at and berated by Mr. Poehlman for absolutely no reason.

69. All this while voluntarily working a double shift in order to help a work colleague.

70. On September 18, 2019, Mr. Poehlman once again called Ms. Ravelo incompetent and reprimanded her simply because she is a Cuban woman.

71. Mr. Poehlman stated that Ms. Ravelo was incapable of performing her work properly due to her limited "perfect" English dialect.

72. Once again on or about November 11, 2019, Ms. Ravelo was working a coordinated event and short staffed.

73. At no point did Mr. Poehlman assists or send additional employees to help Ms. Ravelo cover this event.

74. Instead of chastising and verbally abusing Ms. Ravelo, as he had done many times previously, Mr. Poehlman chose instead to use Kimpton's management to punish or unfairly target Ms. Ravelo on the basis of her race, gender, and national origin.

75. Mr. Poehlman submitted an erroneous written warning accusing Ms. Ravelo of poor work performance as a result of the event.

76. To Plaintiff's knowledge, no male or white Kimpton employees were written up for the November 11, 2019, event.

77. Despite Mr. Poehlman leaving the Epic Hotel, the disparate and unfair treatment of Plaintiff on account of her national origin, race, and/or gender did not stop.

78. Plaintiff was passed over or simply not given the same opportunities as other employees on account of her national origin, race, and/or sex.

79. Plaintiff was denied promotions, raises, more hours, better shifts, etc. on account of her national origin, race, and/or sex, in direction violation of Title VII by her employer, Kimpton.

80. In fact, the denial of these opportunities was made by Kimpton as retaliation for the Plaintiff's complaints to human resources and management regarding inappropriate comments and unfair treatment by Epic Hotel's employees and agents about Plaintiff's national origin, race, and/or gender.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
National Origin Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

82. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their national origin.

83. As alleged above, Plaintiff was discriminated against by Defendant on the basis of

national origin.

84. Defendant deprived Plaintiff of employment opportunities on the basis of her national origin.

85. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

86. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her national origin.

87. As such, Plaintiff further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

88. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

**SECOND CLAIM FOR RELIEF**
National Origin Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

90. Plaintiff was subjected to harassment and discriminatory comments by Defendant's agents and/or employees, because of their national origin.

91. Defendant's agents' and employees' conduct was not welcomed by Plaintiff.

92. Defendant's agents' and employees' conduct was undertaken because of Plaintiff's national origin.

93. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

94. Plaintiff believed her work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

95. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

96. The harassment of Plaintiff was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

97. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of national origin and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

98. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

99. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

100. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

101. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

**THIRD CLAIM FOR RELIEF**
Race Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

102. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

103. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race.

104. As alleged above, Plaintiff was discriminated against by Defendant on the basis of race.

105. Defendant deprived Plaintiff of employment opportunities on the basis of her race.

106. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

107. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on their race.

108. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

109. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

### FOURTH CLAIM FOR RELIEF
Race Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

110. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

111. Plaintiff was subjected to harassment and discriminatory comments by Defendant's agents and employees, including Mr. Poehlman, because of her race.

112. Defendant's agents' and employees' conduct was not welcomed by Plaintiff.

113. Defendant's agents' and employees' conduct was undertaken because of Plaintiff's race.

114. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

115. Plaintiff believed her work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

116. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

117. Plaintiff provided management level personnel and human resources with information sufficient to raise a probability of race based harassment in the mind of a reasonable employer.

118. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

119. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of race and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

120. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

121. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

122. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

123. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the

prosecution of this action.

## FIFTH CLAIM FOR RELIEF
Sex Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

124. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

125. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

126. Defendant discriminated against Plaintiff by treating her differently from her male coworkers, including in employment opportunities, unequal wages, and compensation, because of Plaintiff's sex.

127. Ms. Ravelo's sex was the determining factor and/or a motivating factor in Defendant's actions.

128. As a direct, legal and proximate result of the discrimination, Ms. Ravelo has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendant's actions, Ms. Ravelo has suffered emotional distress, resulting in damages in an amount to be proven at trial.

129. Defendant's unlawful actions were intentional, willful, malicious, and/or done with

reckless disregard to Plaintiff's right to be free from discrimination based on sex.

130. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

131. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

### SIXTH CLAIM FOR RELIEF
Sex Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

132. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

133. Plaintiff was subjected to harassment, discriminatory comments, other unfair treatment by Defendant's agents and employees, including Mr. Poehlman, because of her sex.

134. Defendant's agents' and employees' conduct was not welcomed by Plaintiff.

135. Defendant's agents' and employees' conduct was undertaken because of Plaintiff's sex, female.

136. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find her work environment to be hostile or abusive.

137. Plaintiff believed her work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

138. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

139. Plaintiff provided management level personnel and human resources with information sufficient to raise a probability of sex based harassment in the mind of a reasonable employer.

140. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

141. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of sex and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

142. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

143. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

144. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

145. Plaintiff is entitled to her reasonable attorneys' fees and costs incurred in the prosecution of this action.

### SEVENTH CLAIM FOR RELIEF
Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-3(a)

146. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

147. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

148. Plaintiff made complaints to Defendant's agents and employees opposing

Defendant's unlawful, discriminatory employment practices based on national origin.

149. As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff.

150. Defendant's adverse actions constituted retaliatory workplace harassment.

151. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

152. As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

153. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

154. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

## DECLARATORY RELIEF ALLEGATIONS

155. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated her rights under Title VII. Plaintiff is informed and believes and thereon alleges that the Defendant will deny these allegations. Declaratory relief is therefore necessary and appropriate.

156. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

157. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

158. If this Court does not grant the injunctive relief sought herein, Plaintiff will be

irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

- A. For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;
- B. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;
- C. For compensatory damages for Plaintiff, including but not limited to, emotional pain and suffering, in an amount to be proven at trial;
- D. For punitive damages in an amount to be determined at trial;
- E. For liquidated damages;
- F. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;
- G. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;
- H. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and other laws; and
- I. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: July 8, 2020.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
350 Lincoln Road, Suite 2051B
Miami Beach, FL 33139
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon G. Genadiev*
**SIMEON G. GENADIEV, ESQ.**
Florida Bar No.: 100918